SOUTH PORTO RICO SUGAR Co., Plaintiff and Appellee, *v.* R. SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellant.

No. 7588. Argued May 20, 1938.—Decided January 17, 1939.

*B. Fernández García, Attorney General,* and *E. Campos del Toro, Assistant Attorney General,* for appellant. *R. Castro Fernández* and *José López Baralt* for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

The original action herein was filed more than eight years ago but for some unknown reason was not heard until January 1936. The South Porto Rico Sugar Co. filed suit to recover $12,662.45 which it had paid under protest as a result of the assessment of certain property taxes for the year 1928–29. The fundamental issue presented to the trial court concerned the correct valuation of the property on which the protested tax had been paid. The plaintiff alleged that the following property had been overvalued by the treasurer:

(*a*) 217 eighteen-ton freight cars for the transportation of sugar cane appraised by the treasurer at $93,740; 185 fifteen-ton freight cars appraised by the treasurer at $74,920, and 90 six-ton freight cars appraised at $24,300. The sugar company estimated the value of these cars at $72,996; $48,485; and $5,000, respectively.

(*b*) A farm of 300 cuerdas entitled "Ensenada" which the treasurer assessed at $61,400 while the plaintiff valued it at $5,000.

(*c*) A dock for the shipping of sugar appraised at $9,000 while its reasonable value was only $4,575.

(*d*) Certain edifices and parts of the sugar mill which the treasurer assessed separately and which the plaintiff alleged formed an integral part of the mill itself and thus ought not to be separately taxed. The structures in question and their respective appraisals were as follows:

| | |
|---|---:|
| Salt water pump | $10,000 |
| Ice plant | 5,000 |
| Laboratory | 10,000 |
| Office | 3,800 |
| Fresh water system | 42,400 |
| Sugar warehouses | 110,000 |
| Various other warehouses | 69,400 |
| Oil tanks | 41,000 |
| Total | $291,600 |

Furthermore, the South Porto Rico Sugar Company claimed that the reasonable value of the above buildings was $10,000; $2,000; $6,075; $500; $20,000; $67,557; $7,529; and $4,785, respectively.

(e) Two houses in Guánica which were appraised by the treasurer at $3,400 and which the palintiff alleged had never existed; and

(f) A radio station and towers appraised at $8,000 and which were reasonably worth only $2,000.

The Board of Review and Equalization affirmed the above appraisal made by the treasurer and after payment under protest the plaintiff brought the present suit in the District Court of San Juan.

At the trial the plaintiff introduced in evidence the records of civil cases Nos. 1044 and 3284 of the District Court of San Juan to show what the proper valuation of this same property had been in 1926. The above suits had been between the same parties for the recovery of taxes paid under protest on this same property for the years 1925 and 1926. In both of those suits Rafael Carrión Pacheco had been appointed appraiser of the property under stipulation of the parties and his appraisal accepted by the court. Case No. 1044 was appealed to this court and affirmed as to all matters which might affect the present case. (See 45 P.R.R.———.)

On this basis the South Porto Rico Sugar Co. called Mr. Carrión to the stand, and with his original appraisal on hand which had been made in 1929, asked him to make an estimate of the value of the same properties for the year 1927–28. Relying almost exclusively on his testimony the court found that the rolling stock of the company in 1928 was worth only $140,350 instead of $265,930; that the reasonable value of Ensenada farm was $13,552 instead of $61,400; that the dock for the shipping of sugar was worth only $6,282 instead of $9,000; that the radio station and towers were only worth $3,000 instead of $8,000; and that of the buildings referred to in paragraph (d), supra, the following should be

excluded for the reason that they form part of the main sugar mill which is separately taxed: the salt water pump, the laboratory, the fresh water system and the oil tanks; and that the office building should be valued at $3,000 instead of $3,800; the sugar warehouses should be valued at $100,000 instead of $110,000 and the other warehouses should be valued at $58,525 instead of $69,400.

The two houses referred to under paragraph (e), supra, were apparently dropped from the case.

As a result of these findings the lower court ordered a new assessment to be made by the treasurer.

The treasurer has assigned four errors. The first, second and fourth attack the admissibility of Mr. Carrión's testimony, the correctness of the method employed by him to arrive at his final conclusions, and the weight given to the evidence as a whole.

The appellant relies on the presumption of correctness which an appraisal by the Treasurer ordinarily enjoys. General statements from source books are quoted without showing their direct application to the case under consideration. The method used by the appraiser is attacked without giving any convincing reasons why it is erroneous or should be discarded. It must be borne in mind that Mr. Carrión had appraised all the property now under study in 1929. It is true that he had done so in order to make an estimate of its value in 1926, but we agree with the trial court that he was in a better position, because of his appraisal in 1929, to make an estimate of the fair market value of the property in 1928.

Carrión's appraisal for 1926 was accepted by the district court, and as no appeal was taken from the amount of such appraisal, it could reasonably serve as a guiding criterion for future years. With the possible exception of the land involved, all the buildings, freight cars, and property could be naturally expected to depreciate in value with the lapse of time and the wear and tear of weather and use. Having established the identity of the property and introduced the

expert opinion of an appraiser who had already intervened in a similar controversy, we think the South Porto Rico Sugar Co. had done enough to overcome the presumption invoked by the treasurer. This was not an entirely new case. There were certain precedents, though not amounting to *res adjudicata*, with regard to the valuation of the property. Certainly the case made out by the taxpayer was sufficient to justify the trial court in arriving at its conclusion. The presumption in favor of the correctness of an administrative assessment is not irrebuttable. In the recent case of *Viera v. Domenech,* 53 P.R.R. ——, this court, after tracing the legislative history of our present law providing for the recovery of taxes paid under protest, said:

"We agree with appellant in that it is unnecessary to allege and show fraud or abuse of power in order to secure the refund of taxes paid under protest; but, in agreement with all the authorities, we hold that in order to destroy the presumption in favor of the correctness of the acts of the Treasurer and of the Board a clear proof is required to convince the trial court that the assessment made by the treasurer and upheld by the Board is so excessive that the tax levied in accordance therewith becomes indeed oppressive."

The evidence introduced established a strong case for the taxpayer's position. We cannot say that the trial court was not justified in reaching its conclusion. The treasurer relied exclusively on the presumption in his favor and failed to introduce evidence of any sort. Under these circumstances the court, if convinced by the plaintiff's testimony had good ground to reduce the assessment.

The remaining error questions the holding by which the court decided that the salt water pump, the laboratory, the fresh water system and the oil tanks should be considered part of the mill proper for the purposes of appraisal.

In the case of *South Porto Rico Sugar Co.* v. *Domenech,* 45 P.R.R. —— this same question arose in the court below and said court approved the exclusion of the laboratory, pump and oil tanks from the appraisal on the ground that they

formed an integral part of the sugar mill. The trial court has now also included the fresh water system as a part of the factory. In the above case the present issue was not before this court on appeal and hence the decision does not really support either side. We are of the opinion that the trial judge was correct in considering the above items a necessary and working part of the sugar factory and hence to be excluded from the present assessment.

The judgment appealed from should be affirmed.

Mr. Justice Travieso and Mr. Justice De Jesús took no part in the decision of this case.